**JOHN BURTON,**
1099 Raleigh Street
Green Bay, WI 54304

       Plaintiff,

-vs-                                        **Case No:** 20-CV-222

**PORTFOLIO RECOVERY ASSOCIATES, LLC,**
120 Corporate Boulevard
Norfolk, VA 23502

And

**RAUSCH, STURM, ISRAEL, ENERSON & HORNIK, LLP,**
a/k/a **Rausch Sturm LLP**,
250 N. Sunny Slope Road, Suite 300
Brookfield, WI 53005

       Defendants.

## COMPLAINT

**NOW COMES** the Plaintiff, John Burton, by and through his attorneys, Briane F. Pagel and Lawton & Cates, S.C. and as and for a complaint in the above matter hereby pleads as follows:

1. Plaintiff John Burton is a Wisconsin citizen residing at the address shown in the caption hereto: 1099 Raleigh Street, Green Bay, WI 54304.

2. Defendant Rausch Sturm Israel Enerson & Hornik LLP ("Rausch") is an entity which engages in the practice of assisting individuals and business to collect money, which money is owed to said individuals and businesses, which money is alleged to be owed based on debts incurred by the alleged debtors primarily for personal, family or household purposes. Rausch uses the mail in its business. Rausch has a place of business located at the address shown in the caption hereto: 250 N. Sunny Slope Road, Suite 300, Brookfield, WI 53005.

3. Defendant Portfolio Recovery Associates LLC (Portfolio) is a collection agency which purchases allegedly defaulted debts to collect from those debtors; the debts Portfolio purchases are allegedly in default when Portfolio purchases them, and were incurred or allegedly incurred by the debtors for personal, family, or household purposes. Portfolio has a place of business located at the address shown in the caption hereto: 2215-B Renaissance Drive, Las Vegas, NV 89119.

## Jurisdiction and Venue

4. Most of the events giving rise to this claim took place in this district, and plaintiff is a resident of the Eastern District of Wisconsin.

5. Plaintiff brings this action under 28 U.S.C. § 1331, as it involves a federal question.

6. Plaintiff asserts supplemental jurisdiction under 28 U.S.C. §1367 for state-law questions arising from the same transaction.

## Factual Allegations

7. On May 28, 2019, Portfolio, through its lawyers Rausch, filed a small claims summons and complaint against John Burton in Brown County Circuit Court, Wisconsin, case number 19 SC 2935 (the "state court suit").

8. The state court suit alleged that Burton had incurred a debt of $2,495.34 "charges" "incurred" on an account that had been allegedly opened in October, 2013, and that Burton was in default on that charge account.

9. John Burton lived in Wisconsin as of May 28, 2019, and has resided in Wisconsin continuously at all times material hereto.

10. John Burton was served with the state court suit, and reviewed it to determine what action he should take regarding the suit.

11. After being served the state court lawsuit, Burton determined that it was brought by an attorney, and, being aware of how attorneys generally practice, believed that the lawyer who had brought the suit against him had adequately investigated the claim and had

2

formed a good-faith belief that the claim against him was a valid one. Burton's actions in reviewing and responding to this suit were motivated in substantial part by that belief about the collecting attorney's pre-suit actions.

12. Burton, based on his beliefs about how attorneys operate and because he did not believe he owed the amount alleged in the state court suit, contacted his lawyer to defend him in the state court suit.

13. The state court suit was signed by Attorney Anne Flinchum on April 24, 2019.

14. Attorney Flinchum was admitted to practice in Wisconsin in May 2016. Flinchum is, as of the date on this complaint, the "State Managing Attorney" at Rausch, despite having been a lawyer for less than four years. Flinchum was made the State Managing Attorney in July 2019. According to Flinchum's "Linkedin" profile, her position entails managing a team of 7 people "including law clerks, legal assistants, and litigation attorneys" and also "handling litigation matters in and out of the courtroom." In addition, Flinchum's Linkedin profile says that she is "responsible for updating/creating processes and standards for [Rausch] clients, training new attorneys, and a number of other tasks."

15. Online court records for Wisconsin show that Flinchum has been, as of February 10, 2020 counsel of record in more than 5,000 cases. Online court records can be searched by attorney bar number, but the online records will not return results if there are more than 5,000 results.

16. It is possible to search by attorney bar number and county. The five most populous counties in Wisconsin are (in order from 1-5) Milwaukee, Dane, Waukesha, Brown, and Racine counties. Limiting the search to a county-wide listing, the online records show that Flinchum was counsel of record in:

3

    a.  2,968 cases in Milwaukee County,

    b.  961 cases in Dane County,

    c.  564 cases in Waukesha County,

    d.  709 cases in Brown County,

    e.  751 cases in Racine County.

17. Cases which were filed but which did not result in a judgment are removed from Wisconsin's online court records after two years. Because of that, Flinchum may have been counsel of record in more than 5,000 cases, since the online records as of February 10, 2020, would show only those cases which (a) were older than 2 years but resulted in a judgment, or (b) were less than 2 years old. It is likely that Flinchum has, in her time working in a collection law practice, appeared or been counsel of record in more than well over 5,000 cases.

18. Notwithstanding that, most of Flinchum's cases are more recent. Filtering the search results shows that the following cases had a case number indicating they were filed in 2019 or 2020:

    a.  755 of the 2,968 cases in Milwaukee County.

    b.  232 of the 961 cases in Dane County,

    c.  134 of the 564 cases in Waukesha County,

    d.  341 of the 709 cases in Brown County, and

    e.  467 of the 751 Racine County.

19. The foregoing means that Flinchum has been attorney of record in 1,929 cases filed in the past 406 days alone.

20. Many of Flinchum's cases are listed as "closed." A case is "closed" when a final order, such as a judgment, is entered. However, in collection law practice, a significant number of actions can *only* be taken after a case is "closed," since a collector generally cannot garnish wages or bank accounts, seize property, require a supplemental examination, or take other collection action until after a judgment is entered. This means that the cases showing as "closed" do not mean Flinchum has no work to do in those cases, but rather that she may have substantial amounts of work to do.

21. The cases in which Flinchum has appeared have case numbers going back to 2007, from which it can be inferred that closed cases still require additional work, since Flinchum was not practicing in 2007. One such cases is Milwaukee County case number 07 SC 21305, in which Flinchum filed a "notice of retainer" on June 20, 2019. Flinchum would have no reason to appear in a 2007 case unless there was additional work to do in that case.

22. It is possible using Wisconsin's online records to search how many cases an attorney appeared in or filed as of any given date. In this case, Flinchum approved the Burton complaint on April 24, 2019, and it was filed on May 28, 2019.

23. Flinchum was listed as the attorney of record in 66 cases which were filed on May 28, 2019. Because Burton's state court complaint was approved on April 24, 2019 and filed on May 28, it is reasonable to infer that all of the cases filed under her name on May 28, 2019 were cases Flinchum had approved for filing on April 24, 2019, allowing an inference that Flinchum approved 66 complaints for filing on April 24, 2019.

24. Further, Flinchum appeared as attorney of record in 540 cases filed between April 24, 2019 and May 28, 2019. 537 of those cases were small claims cases.

5

25. In Wisconsin, a small claims summons requires a "return date" which cannot be more than 30 days from the date the summons is issued. A summons is issued on the date an attorney files the case with the Court. This means that any small claims case filed in Wisconsin will have a hearing date calendared for the filing attorney within 30 days of the filing of that small claims case.

26. It is possible to search an attorney's upcoming court schedule on Wisconsin's online court records. These online records do not show past schedules, but only upcoming calendars.

27. According to online court records, Attorney Flinchum's court hearing calendar regularly exceeds 100 hearings in a single, 5-day week. For example, Attorney Flinchum had scheduled:

   a. 115 hearings from June 17-23, 2019.

   b. 101 hearings from June 24-30, 2019.

   c. 125 hearings from August 5-11, 2019.

   d. 264 hearings scheduled from February 3-9, 2020 and

   e. 218 hearings scheduled from February 10-16, 2020.

28. As of the date of this complaint, Attorney Flinchum is scheduled to have:

   a. 274 hearings the week beginning February 10, 2020,

   b. 91 hearings the week beginning February 17, 2020,

   c. 98 hearings the week beginning February 24, 2020, and

   d. 164 hearings the week beginning March 2, 2020.

29. That was a total of 627 hearings in 20 business days, an average of 31.35 hearings each day the courts are open beginning February 10, 2020.

6

30. In small claims cases, a return date cannot be closer than 8 days from the date the summons is issued. This means that it is possible to look at Flinchum's filing history in the month or so before February 10, 2020 to determine how many hearings are likely to be on an attorney's calendar each month.

31. In the period of time from through January 10, 2020 through February 9, 2020 Flinchum filed 500 new cases, of which 481 were small claims cases. This allows a reasonable inference that for each filing Flinchum approved in a given month, she would have 1+ hearings in the next 30 days, or, put another way, a ratio of 1+:1 for hearings: new case filings in the prior 30 days: 1 hearing for a return date on each new filing, plus additional hearings carried over from prior months for cases which had not yet resolved.

32. The hearings Flinchum has scheduled as of February 10, 2020 were scheduled in multiple counties, and often in multiple counties on the same day. For example, Attorney Flinchum had 13 hearings scheduled in nine different counties on February 10, 2020.

33. One important factor to note is that some Wisconsin counties require a plaintiff's attorney to appear in person on the return date. In Flinchum's case, on February 10, 2020 she had numerous return date hearings scheduled at 9:30 a.m. in Fond du Lac County, which requires an in-person appearance on a return date. Flinchum also had numerous hearings scheduled in Oconto County, which requires an in-person appearance from an attorney. Oconto County is approximately 110 miles from Fond Du Lac county, making it difficult if not unlikely that Flinchum could attend those hearings in person. To the extent that Flinchum spent time traveling to and from court hearings, that necessarily cut down on the time she had to review and investigate a claim before approving a case for filing.

7

34. If Flinchum was not planning on attending a hearing in person but instead must send another lawyer from her firm, Flinchum would be required to take the time to make sure that lawyer is adequately prepared for the hearing.

35. Rausch has only limited number of lawyers who practice in Wisconsin. Upon information and belief, those lawyers have a similar case load and would either be unavailable to cover hearings for Flinchum, or would have to have Flinchum cover a hearing for them.

36. Even where a filing does not result in an in-person appearance in the next 30 days, there would still be a return date, and as counsel of record, Flinchum would have been required to monitor the outcome of that hearing and determine what next steps (if any) were required, such as filing a proposed judgment, preparing for a hearing, or otherwise handling the case.

37. Attorney Flinchum at the time of approving the Burton state court complaint was required to do more in her legal practice than file cases and attend hearings; upon information and belief Attorney Flinchum also drafted and caused to be mailed demand letters on behalf of her many clients, and had to send and respond to discovery requests in her cases and engage in other litigation activities such as briefing; in addition, Attorney Flinchum had upon information and belief duties and obligations other than litigation, including but not limited to ministerial office work, travel time, personal obligations, and continuing education and other matters which also made demands on her time. These are all in addition to her workload as a state managing attorney for Rausch.

38. Upon information and belief, the case load and client load for Attorney Flinchum was, at the time of filing Burton's complaint, so high that Flinchum could not and did not meaningfully review and attend to the cases she filed before she filed them.

8

39. Evidence of Flinchum's inability to keep up with her case load in any meaningful way exists specifically in Burton's case.

40. Burton contested the debt lawsuit against him in state court, resulting in a hearing before a court commissioner. This hearing took place on January 13, 2020. The commissioner ruled against Portfolio and dismissed the case.

41. Rausch and Portfolio then filed a "de novo" hearing request, a process which allows them a new trial before a judge.

42. Rausch initially asked for a jury trial in the new trial, and a day later wrote the judge saying that this request had been in error.

43. Then, on February 7, 2020, the Court by electronic notice set a telephone scheduling conference for February 10, 2020 at 8:30 a.m. These notices are delivered electronically to the attorneys for the parties, and upon information and belief was received by Flinchum in her email associated with Wisconsin's electronic filing system not later than 11:20 a.m. on Friday, February 7, 2020.

44. Rausch was ordered to initiate the phone conference on February 10, 2020. The named attorney was Flinchum.

45. Flinchum did not appear at the telephone conference on February 10, 2020, despite the Court attempting to contact her firm. No attorney appeared on behalf of Rausch or Portfolio at that February 10, 2020 telephone scheduling conference. The court assistant was unable to even place a call to an attorney at the time of the scheduling conference.

46. These two errors demonstrate that Flinchum's case load is so demanding that she is unable to monitor ongoing cases or participate in them in any meaningful way.

9

47. Upon information and belief, Rausch has or had in place a system of collection that relies on its collection clients sending them documents in order to open a file.

48. Upon information and belief, Portfolio, as a client of Rausch's sends or sent documents to Rausch in order for Rausch to open a file for collection; further, Portfolio did in fact in the state court suit matter send documents to Rausch to open a file for the collection against Burton.

49. The documents Rausch received from Portfolio, upon information and belief, were minimal at best, and did not include any documentation of the original debt.

50. In Burton's case, upon being hired, Burton's counsel emailed Rausch's counsel on June 19, 2019. In that email, Burton's counsel noted that Burton asserted that he had not received a "notice of right to cure default," a document that is required to be sent by a merchant or creditor before a lawsuit is commenced on a debt of the sort Burton was sued for.

51. Between June 19, 2019 and the date of this complaint, despite repeated communications between Burton's counsel and Rausch or Rausch's counsel, and despite several adjournments of the case against Burton, Rausch and PRA were unable to produce a purported notice of right to cure default until January 2, 2020. At least one federal court has held that the failure to be able to provide a document necessary to show the right to proceed with a case is suggestive of a lack of meaningful involvement by a lawyer in the drafting and filing of a small claims summons and complaint.

52. The fact that PRA provides minimal documentation and that Rausch cannot obtain required documents in less than a few months means that Rausch lawyers such as

Flinchum have a limited ability, at best, to review materials before approving and filing a complaint, since the materials they are given to review are limited.

53. As a result of the case load under which Flinchum labored, and as a result of the limited documentation Rausch is provided by Portfolio, Flinchum had neither sufficient time nor sufficient information to do a meaningful review of a debtor's file before approving a given collection letter or pleading.

54. A lawyer who 'meaningfully' reviews a matter must make a reasoned decision that a lawsuit against a defendant has merit; this requires considering factors related to the ability to legally demand payment of the debt on behalf of a client.

55. Debtors who receive a court paper from Rausch reasonably assume that Flinchum reviewed the matter and that she had made a legal, trained, sophisticated judgment about the validity of the debt and the ability to legally pursue collection when, in fact, based on her practices and Rausch and Portfolio's systems, it is likely that no Rausch lawyer has meaningfully reviewed any matter before a demand or complaint was sent, and no Rausch lawyer, including Flinchum actually meaningfully reviewed any documents or materials sent to Burton before they were sent.

56. Burton did believe that Flinchum had been meaningfully involved in the review, investigation, and preparation of the complaint and letters sent to him, and based upon that belief engaged in internet searches to try to obtain information about this alleged creditor and its lawyers, and ultimately contacted a lawyer to defend him.

57. Portfolio, as a litigant, has been involved in more than 5,000 cases in Wisconsin, as well. In fact, Portfolio has been involved in more than 5,000 cases in Milwaukee County, as well. Portfolio, as of the drafting of this complaint, has been involved in 1,036 cases in

which Flinchum was a lawyer. 542 of those cases were filed in 2019, and 463 were filed in 2020.

58. According to a consent order with the Consumer Financial Protection Bureau, CFPB purchases charged-off debt, receiving a "Sale File" which Portfolio is aware may contain "significant inaccuracies" which may mean that the balance is not accurate. However, the CFPB quoted Portfolio as saying, in response to a question about the accuracy of the information it received, "90% of our cases are default judgments. We show the judge the math and if no one disputes we get our judgment."

59. According to the CFPB, Porfolio as of the date of the consent order filed 3,000 suits per week across the country.

60. According to the CFPB, Portfolio did not require lawyers it hired to collect debts to first review "account-level documents" and prohibited its lawyers from contacting other parties to try to obtain those documents.

61. According to the CFPB, Portfolio collected $319,000,000 from legal collections in the year 2013 alone.

62. In 2015, Portfolio and the CFPB entered into an agreement by which Portfolio was prohibited from using an outside law firm to collect or attempt to collect a debt unless "[a]n attorney has personally reviewed the Debt; or [t]he … writing Clearly and Prominently discloses that no attorney has reviewed the Debt when in fact an attorney has not done so."

### FIRST CAUSE OF ACTION:
### Misrepresentation of level of Attorney Involvement
### (Violation of the Fair Debt Collection Practices Act)
### Defendant Rausch Only:

63. The plaintiff re-alleges and incorporates by reference all previous allegations.

64. The FDCPA, at 15 U.S.C. § 1692e, requires that debt collectors refrain from falsely representing or implying that an attorney was meaningfully involved in the debt collection process when in fact an attorney was not meaningfully involved.

65. Rausch falsely represented or implied that an attorney was meaningfully involved in the debt collection process when it filed and served the state court suit. In fact, there was no meaningful attorney involvement in the debt collection process, as evidenced by Rausch lawyers' extreme caseload and actions as well as the other allegations contained herein.

66. As a direct and proximate result of the foregoing, the plaintiff is entitled to an award of statutory damages and actual damages.

67. As a direct and proximate result of the foregoing, the plaintiff is entitled to an award of statutory damages and actual damages.


### SECOND CAUSE OF ACTION:
### Misrepresentation of Level of Attorney Involvement
### (Violation of Wisconsin Consumer Act)
### (Both Defendants)

68. The plaintiff re-alleges and incorporates by reference all previous allegations.

69. The Wisconsin Consumer Act ("WCA") prohibits debt collectors from directly or indirectly using "a communication which … gives the appearance of being authorized, issued or approved by … [an] attorney-at-law when it is not."

70. Both defendants falsely represented or implied that an attorney was meaningfully involved in the authorization, issuance or approval of the complaint against Burton when

13

they filed and served the state court suit. In fact, there was no meaningful attorney involvement in the debt collection process, as evidenced by Rausch lawyers' extreme caseload and actions as well as the other allegations contained herein.

71. As a direct and proximate result of the foregoing, the plaintiff is entitled to an award of statutory damages and actual damages.

72. As a direct and proximate result of the foregoing, the plaintiff is entitled to an award of statutory damages and actual damages.

**THIRD CAUSE OF ACTION:**
**Misrepresentation of Legal Status of Debt**
**(Violation of the Fair Debt Collection Practices Act)**
**Defendant Rausch Only:**

73. The plaintiff re-alleges and incorporates by reference all previous allegations.

74. Rausch's conduct in filing the state court action was done in an attempt to collect money it claimed Burton owed PORTFOLIO.

75. PORTFOLIO alleged itself in the state court suit to be an assignee to a prior creditor; that creditor was later revealed to be Synchrony Bank. Synchrony Bank regularly engages deals in credit in a manner which directly and indirectly result in individuals borrowing money for personal, family, or household purposes.

76. By hiring Rausch to file the lawsuit, and by being the plaintiff in the lawsuit, Rausch and PORTFOLIO engaged both directly and indirectly in attempting to collect money owed to Portfolio by Burton, which money PORTFOLIO alleged was owed as a result of Burton's using said money for personal, family and household reasons.

77. Under Wisconsin law, a lawsuit cannot be filed unless and until a creditor or merchant provides a statutorily-required notice of right to cure default and waits at least 15 days before filing suit.

14

78. In this matter, at the court commissioner level, Portfolio and Rausch produced what they claimed was a notice of right to cure default sent by Synchrony. No affidavit of mailing or service by Synchrony has ever been provided (despite Burton's request for same) and no person from Synchrony testified that Synchrony sent the notice to Burton.

79. At the court commissioner level, Burton challenged the validity of the purported notice of right to cure default that Rausch and Portfolio claimed was sent; the commissioner ruled that notice defective and dismissed the claim against Rausch.

80. Based upon the facts alleged herein, Rausch & PORTFOLIO's practices as alleged herein violate §427.104(1)(k), Wis. Stats., and Burton is entitled to remedies allowed for that violation including but not limited to statutory and actual damages, and reasonable attorney's fees.

### Damages Allegations:

81. The plaintiff re-alleges and incorporates by reference all previous allegations.

82. Burton as a result of the foregoing has suffered actual damages, including but not limited to emotional distress at being sued by a lawyer; Burton reasonably assumed that Rausch lawyers had looked over his file and determined he was likely to lose, and Burton suffered distress over the fact that he was sued by lawyers; had Burton been made aware that Rausch lawyers still did not engage in a meaningful review of his matter before filing the lawsuit, he would have felt more able to contest the debt and would not have felt it necessary to turn it over to his lawyer. Burton has otherwise in the past fought, *pro se* collection efforts, and would have felt capable of doing so here had he not believed that Rausch was meaningfully involved in the collection matter.

83. Burton's emotional distress was made worse by the fact that Rausch and Portfolio made the case take much longer than it should have; the delay between the original filing and the eventual January hearing was due entirely to Portfolio and Rausch, the latter of whom had requested that lawsuits such as this be resolved informally before suit if possible; Burton accordingly allowed the defendants time to attempt to prove that they gave him a valid notice of right to cure default, and that they were not liable as otherwise alleged in this complaint. However, after more than six months, the defendants had not provided any information that would show Burton that he should not proceed with this claim, and so Burton at that point went ahead with his defense in the state court; had Rausch and Portfolio operated their businesses in such a way as to ensure that lawyers are meaningfully involved in the preparation and service of suits, Burton would not have had to wait six months for a purported notice of right to cure default and would not have had to fear, for those six months, that he might be held liable for a debt that he did not believe he owed.

84. Under the WCA, consumers in Wisconsin have a right to be free from false representations of the level of attorney involvement in the preparation and approval of debt collection suits. PORTFOLIO and Rausch's behavior as alleged herein demonstrates an intentional disregard of those rights, and Burton is thus entitled to punitive damages under state law.

## **Prayer for Relief**

**WHEREFORE**, the plaintiff respectfully requests that the Court find that the defendants have violated the FDCPA and WCA and award such relief as the Court finds necessary to redress the injuries to the plaintiff arising from the defendants' conduct, including but not limited to statutory damages, actual damages, punitive damages and attorney's fees.

### **PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES IN THIS ACTION.**

Dated: This 12th day of February, 2020

**Lawton & Cates, S.C.**
Attorney for Plaintiff, John Burton
*Electronically signed by:*

*/s/ Briane F. Pagel* _____
Attorney Briane F. Pagel
State Bar No. 1025514

P.O Address:
345 W. Washington Ave. Suite 201
P.O. Box 2965
Madison, WI 53703
P: 608.282.6200
F: 608.282.6252
bpagel@lawtoncates.com

17